UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE DUKES, #719547,

       Petitioner,

                                        CASE NO. 2:11-CV-15403
v.                                    HONORABLE NANCY G. EDMUNDS

JOHN PRELESNIK,

       Respondent.
_____/

**OPINION & ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
& DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.    Introduction**

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Willie Dukes ("Petitioner") was convicted of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), and assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, following a jury trial in the Wayne County Circuit Court. He was sentenced to concurrent terms of 95 months to 20 years imprisonment on the home invasion conviction and 225 months to 40 years imprisonment on the assault conviction in 2009. In his pleadings, Petitioner raises claims concerning the admission of his police statement and the validity of his sentences. Respondent has filed an answer to the petition contending that it should be denied. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed in *forma pauperis* on appeal.

## II.      Facts and Procedural History

Petitioner's convictions arise from the home invasion and assault of his friend Leonard Hudson's elderly grandparents, Annie Hudson and Hayes Hudson, during an attempted armed robbery at their home in Detroit, Michigan on September 26, 2008. The prosecution's theory was that Petitioner, Leonard Hudson, and another friend, Elijah Hurn, convinced a girl named Tara Cronk to trick her way into the Hudsons' home as part of a plan to get the men into the house so that they could steal money from the Hudsons. During the incident, Petitioner forced the Hudsons to the ground, threatened them, and kicked Mr. Hudson in the face.

Prior to trial, defense counsel moved to suppress Petitioner's police statement, which he gave during an interview conducted after his arrest on September 29, 2008. The trial court conducted a hearing. Detroit Police Officer Deon Peoples testified that he spoke to Petitioner after his arrest to try to develop a rapport with him. He asked him a few preliminary questions such as his name and where he went to school. Petitioner, however, was "playing hardball, playing tough guy," so Officer Peoples did not advise him of his rights nor interrogate him about the incident. Officer Peoples had Petitioner taken back to a cell because he thought it would be best for Petitioner to have a "cooling down period." According to Officer Peoples, Petitioner did not ask for counsel, indicate that he did not want to answer questions, or invoke his right to remain silent. Petitioner, in contrast, testified that the officer took him into a back room and asked him if he had "anything to do with hitting that old man." Petitioner replied that he did not, then told the officer that he did not feel well and that he did not want to talk. He was then taken out of the interrogation room. The trial court denied the motion to suppress.

At trial, victim Annie Hudson testified that a girl (Tara Cronk) knocked on her door, said that she was having car trouble, and asked to use her telephone. Mrs. Hudson let her in. Then a man whom she identified as Petitioner came in and pointed a gun at her. He shoved her on the floor and ran to the back door, which was locked. When her husband came into the room, Petitioner put him on the floor on top of her and kicked him in the face twice. Petitioner pointed the gun at both of them. When Petitioner went into the kitchen, Mrs. Hudson ran outside for help. She saw the girl and Petitioner run from the house. The police arrived and brought the girl back into her house. A few days later, Mrs. Hudson identified Petitioner at a line-up conducted at the police station. Mrs. Hudson testified that she did not see her grandson in the house during the incident.

Tara Cronk testified at trial pursuant to a plea agreement in which she pleaded guilty to first-degree home invasion and agreed to testify at trial in exchange for sentencing under the Holmes Youthful Training Act. Cronk testified that she picked up Leonard Hudson, Elijah Hurn, and Petitioner and drove them to the Hudsons' home. They convinced her to go along with their plan to enter the Hudsons' home and rob them, but she denied knowing that anyone had a gun. When Mrs. Hudson let her into the house, she sat down in a chair and pretended to make a call. Petitioner came in with a gun and pushed Mrs. Hudson down on the floor. When Mr. Hudson entered the room, Petitioner pushed him down on the floor and pointed the gun at both of them. Petitioner went into the kitchen. Cronk her a loud banging sound like a door trying to be opened. Petitioner returned and kicked Mr. Hudson in the face. Petitioner ran back to the kitchen, and Cronk heard more loud noises. Mrs. Hudson got up, went outside, and yelled for help. Petitioner then ran out of the house and fled the scene. Cronk also ran out of the house, but went in the opposite direction.

Cronk then received a call from Leonard Hudson and Elijah Hurn about a rifle that was left in her car. When Cronk got to her car, she realized that she did not have her keys and thought they were on the chair in the Hudsons' house. She wrapped the rifle in a hoodie and put it behind a garage in the alley. She and Leonard Hudson then returned to the house. When they arrived, several family members and the police were there. When questioned by the police, she and Leonard Hudson first lied about what had transpired, but Cronk eventually told them the truth and was arrested.

Several Detroit police officers testified at trial. Officer Treva Eaton testified that she responded to the scene and found Tara Cronk and Leonard Hudson on the porch of the victims' home. After questioning them and determining that Cronk had a working cell phone and working car, she arrested them. She also arrested Petitioner three days later. Officer Deon Peoples testified that he attempted to interview Petitioner after his arrest, but only asked a few preliminary questions because he was uncooperative. Officer Peoples also confirmed that Mrs. Hudson identified Petitioner in a live line-up. Sergeant Nathan Duda testified that he interviewed Petitioner in the evening on the day of his arrest. He advised Petitioner of his constitutional rights. Petitioner agreed to speak with him and signed a form. In his police statement, Petitioner acknowledged being in the Hudsons' home and said that he might have accidentally kicked Mr. Hudson while fleeing the scene. Petitioner claimed that Leonard Hudson went in the house and put his grandparents on the floor. Petitioner's police statement was admitted into evidence.

Petitioner did not testify at trial nor call any defense witnesses.

At the close of trial, the jury convicted Petitioner of first-degree home invasion and assault with intent to rob while armed, but acquitted him of assault with a dangerous

4

weapon and felony firearm. The trial court subsequently sentenced him at the top end of the sentencing guidelines range to concurrent terms of 95 months to 20 years imprisonment on the first-degree home invasion conviction and 225 months to 40 years imprisonment on the assault conviction.

Following sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, essentially raising the same claims presented on habeas review. The court denied relief on those claims and affirmed his convictions and sentences. *People v. Dukes*, No. 290624, 2010 WL 1930655 (Mich. Ct. App. May 13, 2010) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Dukes*, 488 Mich. 914, 789 N.W.2d 455 (2010).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.  The denial of the motion to suppress inculpatory statement constituted reversible error.

II. The sentences imposed violated constitutional guarantees against cruel and unusual punishment.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases brought by state prisoners. The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; see also *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require a state court to give reasons

7

before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 131 S. Ct. at 785. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

**IV.  Analysis**

    **A.  Admission of Police Statement Claim**

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in admitting his inculpatory police statement into evidence. In particular, he claims that the police improperly continued to question him after he invoked his right to remain silent. Respondent contends that this claim lacks merit.

The United States Supreme Court has held that the interrogation of a suspect must cease when the suspect invokes the right to remain silent or the right to the assistance of

counsel. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966); *see also Michigan v. Mosley*, 423 U.S. 96, 104 (1975). If a suspect wishes to invoke the right to counsel, however, he or she must do so unambiguously. *Davis v. United States*, 512 U.S. 452, 458-59 (1994). As the Supreme Court held in *Davis*, "if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel our precedents do not require the cessation of questioning." *Id*. at 459. Although *Davis* concerned the right to counsel, "every circuit that has addressed the issue squarely has concluded that *Davis* applies to both components of *Miranda*: the right to counsel and the right to remain silent," *Bui v. DiPaola*, 170 F.3d 232, 239 (1st Cir. 1999) (collecting cases), including the United States Court of Appeals for the Sixth Circuit. *See United States v. Hurst*, 228 F.3d 751, 759-60 (6th Cir. 2000) (ruling that a suspect's invocation of the right to remain silent must be unequivocal to require that police questioning cease); *United States v. Hicks*, 967 F. Supp. 242, 249-50 (E.D. Mich. 1997).

In this case, the Michigan Court of Appeals ruled that the trial court properly admitted Petitioner's police statement and denied relief on this claim. The court explained in relevant part:

> A statement made by a defendant to the police that was given in response to a custodial interrogation will not be admissible unless a defendant was first made aware of his rights. *Miranda v. Arizona*, 384 U.S. 436, 467–473, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). If a defendant unequivocally invokes his right to remain silent after having been advised of his *Miranda* rights, the police must stop questioning the defendant. *People v. Adams*, 245 Mich. App. 226, 231–234, 627 N.W.2d 623 (2001). So long as the defendant's invocation was "scrupulously honored" by the police, a later statement by the defendant may be admissible. *People v. Williams*, 275 Mich. App. 194, 198, 737 N.W.2d 797 (2007).

9

> In the present case, defendant's invocation of his right to remain silent was not unequivocal. About 45 minutes to an hour after defendant was arrested, a police officer brought defendant out of a "bull pen" and into a room. The officer did not read defendant his *Miranda* warnings. The officer testified that he did not ask defendant any questions specifically about the case. He only asked defendant general questions, such as defendant's name, and where defendant went to school. He asked these questions in order to develop a rapport with defendant. But, he thought that defendant was "playin' hard ball, playin' tough guy, streetish, acting ghetto...." Seeing that the questioning was not "going well at all," the officer ended the questioning. The officer testified that defendant never said he did not want to answer any questions, nor did defendant ever ask for an attorney. A different officer later interrogated defendant. The officer gave defendant his *Miranda* warnings, and obtained a written statement from defendant. That statement was used at trial.
>
> Defendant's testimony differs from the officer's testimony. Defendant testified that the officer asked defendant if defendant "had anything to do with hittin' that old man?" Defendant responded no, and told him "I don't feel good, and I don't wanna talk."
>
> Although the transcript from the motion hearing is somewhat confusing, it is clear that the trial court did not find defendant's testimony credible. This Court defers to the trial court's assessment of the credibility of the witnesses. *Tierney*, 266 Mich. App. at 708, 703 N.W.2d 204. Giving deference to the trial court's determination of credibility, it cannot be said that the trial court's finding was clearly erroneous, because its finding was consistent with the testimony of the officer. The trial court did not find defendant's testimony to be credible. Accordingly, the trial court did not err in denying defendant's motion to suppress the admission of his statement to the police.

*Dukes*, 2010 WL 1930655 at *1-2.

Having reviewed the record, the Court finds that the Michigan Court of Appeals' determination is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The record does not establish that Petitioner clearly and unequivocally invoked his right to remain. The police officer's testimony, if credited, indicates that Petitioner did not invoke his right to remain silent and instead willingly spoke to police after being advised of his constitutional rights. Given the trial court's denial of the

motion to suppress, it is clear that the court accepted the police officer's, rather than Petitioner's, version of events. The trial court's factual findings and credibility determinations are entitled to deference on habeas review. Because Petitioner did not unequivocally invoke his right to remain silent, the trial court did not err in admitting his police statement into evidence. More importantly, for purposes of habeas review, the Michigan Court of Appeals' decision to that effect was reasonable. Habeas relief is not warranted on this claim.

### B. Sentencing Claim

Petitioner next asserts that he is entitled to habeas relief because his sentences constitute cruel and unusual punishment under state and federal law. Respondent contends that this claim is barred by procedural default and/or lacks merit.

Petitioner first raised the sentencing issue on direct appeal before the Michigan Court of Appeals. The court ruled that the claim was un-preserved, but reviewed it for plain error. Upon such review, the court ruled that the claim lacked merit because Petitioner's sentences are within the state sentencing guidelines, are presumptively proportionate under state law, and are not cruel and unusual punishment. *Dukes*, 2010 WL 1930655 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As an initial matter, the Court notes that Petitioner's sentences are within the statutory maximums of 20 years imprisonment for first-degree home invasion and life imprisonment for assault with intent to rob while armed. MICH. COMP. LAWS §§ 750.110a(2), 750.89. A sentence within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741

(1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner makes no such showing.

Petitioner asserts that his sentences violate the Michigan Constitution's prohibition against cruel and unusual punishment. This claim, however, is not cognizable on federal habeas review because it is a state law claim. *See Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Broadnax v. Rapelje*, No. 2:08-CV-12158, 2010 WL 1880922, *3 (E.D. Mich. May 11, 2010); *Baker v. McKee*, No. 06-CV-12860, 2009 WL 1269628, *6 (E.D. Mich. April 30, 2009). State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Petitioner has failed to state a claim upon which relief may be granted as to this issue.

Petitioner relatedly asserts that his sentences violate the Federal Constitution's prohibition against cruel and unusual punishment. He is not entitled to relief on this Eighth Amendment claim. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin*, 213 F.3d at 302 (internal citation omitted). Petitioner's sentences, while lengthy, are within the state sentencing guidelines

and the statutory maximums. The trial court acted within its discretion in imposing Petitioner's sentences and there is no extreme disparity between his crime and sentences so as to offend the Eighth Amendment. Simply stated, Petitioner not shown that his sentences are unconstitutional. Habeas relief is not warranted on this claim.[1]

**V.     Conclusion**

For the reasons set forth, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). This standard is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits. *Id.* at 336-37.

Having conducted the requisite review, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES**

---

[1] Given this determination, the Court need not address the issue of procedural default.

leave to proceed in *forma pauperis* on appeal as an appeal cannot be taken in good faith.

*See* FED. R. APP. P. 24 (a).

**IT IS SO ORDERED.**

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 31, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2013, by electronic and/or ordinary mail.

S/Johnetta M. Curry-Williams
Case Manager
Acting in the Absence of Carol A. Hemeyer